```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF GEORGIA
                         COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE       *    MDL Docket No. 2004
                                     4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS   *
                                     Case Nos.
LIABILITY LITIGATION            *    4:13-cv-00017 (Bromley)
                                     4:13-cv-00339 (Larranaga)
                                *    4:13-cv-00464 (Kaiser)
                                     4:13-cv-00485 (Hill)
                                *    4:14-cv-00060 (Burt)
                                     4:14-cv-00062 (Alexander)
                                *
```

<u>O R D E R</u>

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiffs Lisa Bromley, Maria Larranaga, Marian Kaiser, Sandy Anne Hill, Barbara Burt, and Leslie Alexander were implanted with ObTape and assert that they suffered injuries caused by ObTape. Each Plaintiff brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Plaintiffs also assert that Mentor did not adequately warn their physicians about the risks associated with ObTape. Mentor seeks partial summary judgment on several of Plaintiffs' claims. For the reasons set forth below, Mentor's partial summary judgment motions are granted as to Bromley, Larranaga, and Hill. The motions are granted in part and denied in part as to Kaiser, Burt, and Alexander.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

**I.   Lisa Bromley (ECF No. 45 in 4:13-cv-17)**

On October 18, 2005, Dr. Fawad Zafar implanted Bromley with ObTape to treat her stress urinary incontinence.  In 2007, Bromley's husband began to experience comfort during sex, "like he was hitting some type of plastic or something that was hard." Bromley Dep. 93:10-21, ECF No. 45-5.  The problem worsened, and Bromley's husband "said he could actually, you know, see [the ObTape], that it was actually -- that it looked like it was not supposed to be coming out, but it looked like it was -- you know, it was falling apart."  *Id.* at 96:20-97:7.

In September 2008, Bromley went to Dr. Priscilla Ruhe with complaints of burning with urination. At the time, according to Bromley, "you could see the actual mesh falling out." *Id.* at 106:14-18. Dr. Ruhe saw an exposed piece of ObTape in Bromley's vagina, and she told Bromley that "it looked like it was part of the bladder sling" and "that it shouldn't have been falling out." *Id.* at 105:18-106:4. Dr. Ruhe told Bromley that the "excess material" was "causing [Bromley] pain in the vagina from the irritation." *Id.* at 107:15-23. Dr. Ruhe removed the eroded portion of ObTape. Bromley contends that she did not connect her complications to ObTape until she consulted another doctor in 2011 and learned that the remainder of the ObTape would have to be removed.

Bromley is an Iowa resident whose ObTape-related treatment took place in Iowa. She filed her action in Hennepin County District Court of the State of Minnesota and served Mentor with the Complaint on December 21, 2012. Bromley brought claims for strict liability and negligence.

**II. Maria Larranaga (ECF No. 29 in 4:13-cv-339)**

Larranaga saw her gynecologist, Dr. Steve Vouis, for treatment of stress urinary incontinence. Dr. Vouis implanted Larranaga with ObTape on December 29, 2005. Larranaga did not see any materials from Mentor regarding ObTape, and she did not speak with any representatives of Mentor about the product. Larranaga

3

asserts that Mentor misrepresented to Dr. Vouis (or concealed from him) an accurate complication rate for ObTape, the severity of known ObTape complications, and true information about ObTape's physical characteristics. She also contends that if Dr. Vouis had known the true risks of ObTape, he would not have implanted it in Larranaga. But Larranaga did not point the Court to any evidence on this point.[1]

Larranaga returned to Dr. Vouis in October 2008 complaining of recurrent incontinence and dyspareunia. Dr. Vouis did not connect Larranaga's symptoms with ObTape. Larranaga currently attributes several symptoms—including dyspareunia, pain, and incontinence—to ObTape.

Larranaga is a California resident whose ObTape-related treatment took place in California. She filed her action in Hennepin County District Court of the State of Minnesota on July 3, 2013. Larranaga brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

---

[1] Larranaga asserts that Dr. Vouis testified that he would not have used ObTape if he had known of its true risks. Larranaga cites several pages of Dr. Vouis's deposition in support of these assertions (108, 119-121), but she did not include those pages in the deposition excerpt of Dr. Vouis that she submitted to the Court, so the present record does not support her assertions. "Material facts not supported by specific citation to particular parts of materials in the record . . . will not be considered by the court." M.D. Ga. L.R. 56.

4

**III. Marian Kaiser (ECF No. 29 in 4:13-cv-464)**

Kaiser sought treatment for stress urinary incontinence from Dr. David Guthman. Dr. Guthman implanted Kaiser with ObTape on May 16, 2005. Kaiser did not see any materials from Mentor regarding ObTape, and she did not speak with any representatives of Mentor about the product. Kaiser asserts that she suffered various injuries caused by ObTape.

Kaiser asserts that Mentor misrepresented to Dr. Guthman (or concealed from him) an accurate complication rate for ObTape, the severity of known ObTape complications, and true information about ObTape's physical characteristics. *E.g.*, Guthman Dep. 42:8-43:22, ECF No. 31-3. She also pointed to evidence that if Dr. Guthman had known the true risks of ObTape, he would not have implanted it in Kaiser. *Id*. at 38:19-21 ("[I]n pursuit of the health of our patient, we always try to use the safest, lowest-risk device possible."); *id*. at 78:14-19 (stating that Dr. Guthman would always choose the safer alternative product); *id*. at 85:17-86:2 (stating that if Mentor had provided him with additional information suggesting that ObTape had a higher risk than other products, he "would probably have searched out an alternative").

Kaiser is an Illinois resident whose ObTape-related treatment took place in Illinois. She filed her action in Hennepin County District Court of the State of Minnesota and served Mentor with the Complaint on September 10, 2013. Kaiser brought claims for

5

strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

**IV.  Sandy Anne Hill (ECF No. 29 in 4:13-cv-485)**

Hill saw Dr. Clifford Sarnacki for treatment of stress urinary incontinence.  Dr. Sarnacki diagnosed Hill with bladder prolapse and recommended surgery.  On July 30, 2004, Dr. Sarnacki implanted Hill with ObTape, although Hill claims that she did not learn about the implanted device until sometime later.  Hill did not see any materials from Mentor regarding ObTape, and she did not speak with any representatives of Mentor about the product.  Hill asserts that the ObTape did not cure her incontinence and that it caused her abdominal pain.

Hill appears to assert that Mentor misrepresented to Dr. Sarnacki (or concealed from him) an accurate complication rate for ObTape, the severity of known ObTape complications, and true information about ObTape's physical characteristics.  She also appears to assert that if Dr. Sarnacki had known the true risks of ObTape, he would not have implanted it in Hill.  But Hill did not point the Court to any evidence on this point.[2]

---

[2] Dr. Sarnacki passed away before his deposition could be taken.  Hill did not point to any evidence that Dr. Sarnacki relied on information from Mentor in deciding to implant Hill with ObTape or that he would have made a different decision if he had been given different information.  The Court cannot speculate as to what Dr. Sarnacki might have said had he been able to testify.

Hill is a Texas resident whose ObTape-related treatment took place in Texas. She filed her action in Hennepin County District Court of the State of Minnesota and served Mentor with the Complaint on September 27, 2013. Hill brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

**V.   Barbara Burt (ECF No. 27 in 4:14-cv-60)**

Burt sought treatment for stress urinary incontinence from Dr. Thomas Truluck. Dr. Truluck implanted Burt with ObTape on April 24, 2006. Burt did not see any materials from Mentor regarding ObTape, and she did not speak with any representatives of Mentor about the product. Burt asserts that she suffered various injuries caused by ObTape.

Before he implanted Burt with ObTape, Dr. Truluck received training from Mentor and reviewed the ObTape product information data sheet. Truluck Dep. 26:6-17, ECF No. 29-3. A Mentor representative told Dr. Truluck that the approach for implanting ObTape was a new and safer approach. Dr. Truluck testified that if he had known that ObTape had a higher rate of extrusion than other slings, he would not have implanted Burt with it. *Id.* at 42:3-9.

Burt is a North Carolina resident whose ObTape-related treatment took place in North Carolina. She filed her action in

7

Hennepin County District Court of the State of Minnesota and served Mentor with the Complaint on February 3, 2014. Burt brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

**VI.  Leslie Alexander (ECF No. 27 in 4:14-cv-62)**

Dr. Thomas Phillips implanted Alexander with ObTape on September 27, 2004. Alexander did not see any materials from Mentor regarding ObTape, and she did not speak with any representatives of Mentor about the product. Dr. Phillips testified that if he had known that ObTape had a higher rate of infection than other slings, he would not have implanted ObTape in his patients. Phillips Dep. 20:9-19, ECF No. 29-3.

Alexander suffered recurrent incontinence in 2007 and sought treatment from Dr. Roberto Ferraro in 2008. Dr. Ferraro conducted exploratory surgery in June 2008 and discovered that Alexander's ObTape had eroded through her vaginal wall. Dr. Ferraro removed the portion of ObTape that he could remove. Alexander acknowledges that Dr. Ferraro told her in 2008 that she suffered a vaginal erosion of the ObTape. Alexander Dep. 21:21-22:9, ECF 27-5. Alexander contends that she did not connect her complications to ObTape until she saw a television commercial regarding mesh injuries in 2013.

8

Alexander is a North Carolina resident whose ObTape-related treatment took place in North Carolina. She filed her action in Hennepin County District Court of the State of Minnesota and served Mentor with the Complaint on February 3, 2014. Alexander brought claims for strict liability, negligence, breach of express warranty, breach of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

## DISCUSSION

Each Plaintiff filed her action in Minnesota state court, and Mentor removed each Plaintiff's action to the United States District Court for the District of Minnesota. The cases were later transferred to this Court as part of a multidistrict litigation proceeding regarding ObTape. The parties agree for purposes of summary judgment that Minnesota law applies to Plaintiffs' claims. *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-md-2004, 2013 WL 286276, at *7 (concluding that Minnesota law applied to claims of non-Minnesota ObTape plaintiffs who brought their actions in Minnesota).

**I.   Strict Liability Claims**

Mentor contends that Bromley and Alexander's strict liability claims are time-barred under Minnesota law. The statute of limitations for a strict liability claim is four years. Minn. Stat. § 541.05 subd. 2 ("[A]ny action based on the strict

9

liability of the defendant and arising from the manufacture, sale, use or consumption of a product shall be commenced within four years."). Under Minnesota law, "a claim involving personal injuries allegedly caused by a defective product accrues when two elements are present: '(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission.'" *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992) (quoting *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987)) (applying Minnesota law).

"A plaintiff who is aware of both her injury and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause." *Id.* For example, in *Klempka*, the plaintiff suffered injuries and was diagnosed with chronic pelvic inflammatory disease, which her doctor said was caused by the plaintiff's intrauterine device. *Id.* at 169. Several years later, the plaintiff was told that she was infertile and that the intrauterine device caused her infertility. *Id.* Applying Minnesota law, the Eighth Circuit concluded that the plaintiff's cause of action accrued when she first learned that she had an injury (chronic pelvic inflammatory disease) that was caused by the intrauterine device. *Id.* at 170.

10

Bromley cannot seriously deny that she knew she suffered some injuries caused by ObTape in September 2008 when Dr. Ruhe told Bromley that her pain was caused by the exposed ObTape. And Alexander cannot seriously dispute that she knew she suffered some injuries caused by ObTape in June 2008 when Dr. Ferraro told her that her ObTape had eroded through her vaginal wall. Bromley argues, however, that her claims did not accrue until she consulted a different doctor in 2011 and learned that the remainder of her ObTape would have to be removed. And Alexander asserts that her claims did not accrue until she saw an advertisement regarding mesh injuries in 2013.

Bromley and Alexander did not point to any Minnesota authority holding that a plaintiff must be on actual notice that her specific injuries were caused by a *defect.* Rather, the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product. *Klempka*, 963 F.2d at 170.

Bromley and Alexander nonetheless contend that one Eighth Circuit case and one Minnesota District Court case support denial of summary judgment in this case. The Court disagrees. First, they point to *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004). In *Tuttle*, the district court found that the decedent's smokeless tobacco product liability action accrued when the decedent discovered a lump in his cheek. The Eighth Circuit

11

reversed because the decedent's doctor initially told the decedent that the lump was caused by an oral infection and was treatable with antibiotics—not that it was oral cancer caused by the tobacco. *Id.* at 922. Second, Bromley and Alexander point to *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972 (D. Minn. 2013). In *Huggins*, the plaintiff asserted that the defendant's pain pump caused a condition that resulted in degeneration of his cartilage. The plaintiff's doctor discovered the loss of cartilage in 2002, but he did not connect the condition to the pain pump or tell the plaintiff that there was such a connection. The district court noted that the "first article recognizing a potential causal link between pain pumps" and the plaintiff's condition was not published until 2007. *Id.* *Tuttle* and *Huggins* are both distinguishable from Bromley and Alexander's cases. Unlike in *Tuttle* and *Huggins*, there is no dispute that Bromley and her doctor connected Bromley's injuries to ObTape in September 2008, and there is no dispute that Alexander and her doctor connected Alexander's injuries to ObTape in June 2008.

Bromley and Alexander argue that even if Minnesota's discovery rule does not save their strict liability claims, the statute of limitations should be tolled by fraudulent concealment. "Fraudulent concealment, if it occurs, will toll the running of the statute of limitations until discovery or reasonable opportunity for discovery of the cause of action by the exercise

12

of due diligence."  *Holstad v. Sw. Porcelain, Inc.*, 421 N.W.2d 371, 374 (Minn. Ct. App. 1988); *accord Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 918 (Minn. 1990). "The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence." *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975). As discussed above, Dr. Ruhe told Bromley in September 2008 that her pain was caused by ObTape and that the mesh "shouldn't have been falling out." Bromley Dep. 105:18-106:4. And Dr. Ferraro told Alexander in June 2008 that her ObTape had eroded through her vaginal wall. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. But Bromley and Alexander pointed to no evidence that they took any action to investigate their potential claims even though they knew there was a connection between their injuries and the ObTape. Under these circumstances, the Court concludes that fraudulent concealment does not toll the statute of limitations. Bromley's strict liability claim accrued in September 2008, and Alexander's accrued in June 2008. Neither filed her Complaint within four years of the accrual. The strict liability claims of Bromley and Alexander are therefore time-barred.

## II. Misrepresentation and Common Law Fraud Claims

Larranaga, Kaiser, Hill, Burt, and Alexander assert claims for common law fraud, negligent misrepresentation, and intentional misrepresentation. Mentor seeks summary judgment on these claims, contending that Minnesota law requires each Plaintiff to prove that she was injured because *she* relied on a misrepresentation from Mentor. But under Minnesota law, a misrepresentation claim in a medical device case can be premised on the manufacturer's alleged misrepresentations to a physician—not just misrepresentations directly to the patient. *Kociemba v. G.D. Searle & Co.*, 707 F. Supp. 1517, 1525 (D. Minn. 1989); *accord In re Minnesota Breast Implant Litig.*, 36 F. Supp. 2d 863, 879 (D. Minn. 1998) ("Statements made by a pharmaceutical representative directly to a physician should be expected to be relied upon[.]"). Thus, if a plaintiff can establish that the manufacturer made misrepresentations to her physician regarding the risks of a product and that the physician would not have recommended the product for the plaintiff had he known the product's true risks, then the reliance and causation elements are satisfied.[3]

---

[3] Mentor seeks summary judgment on Plaintiffs' "negligent misrepresentation" claims because Minnesota has not expressly recognized the tort of negligent misrepresentation involving the risk of physical harm. *See Smith v. Brutger Cos.*, 569 N.W.2d 408, 413 (Minn. 1997) (declining to recognize the tort of negligent misrepresentation with physical harm but stating that the decision did "not foreclose the possibility of recognizing in Minnesota the tort of negligent misrepresentation involving the risk of physical harm" under a different factual scenario—with an actionable misrepresentation, reasonable reliance, and a causal connection). In support of their "negligent

Here, Plaintiffs assert that Mentor, intending to defraud them and induce them to undergo the ObTape procedure, made misrepresentations to their physicians that induced the physicians to recommend ObTape to Plaintiffs.  Plaintiffs further contend that they relied on their doctors in deciding to proceed with the ObTape procedure.  Kaiser, Burt, and Alexander each produced evidence that their physicians would not have implanted them with ObTape had they known its true risks.  Thus, for Kaiser, Burt, and Alexander, the Court is satisfied that a genuine fact dispute exists on the justifiable reliance and causation elements, and Mentor is not entitled to summary judgment on their fraud and misrepresentation claims.

Larranaga and Hill, however, did not point the Court to any evidence that their physicians relied on a misrepresentation from Mentor in selecting ObTape or that the physicians would not have recommended ObTape had they known its true risks.  They contend that the Court should apply a "heeding presumption"—a "rebuttable presumption that the injured person would have heeded an adequate warning, had one been provided," which Minnesota has recognized in certain product cases.  *Prairie v. Mio Mech. Corp.*, No. 27-CV-12-14077, 2013 WL 3869264, at *6 (Minn. Dist. Ct. June 25, 2013).

---

misrepresentation" claims, Plaintiffs allege that Mentor did not exercise reasonable care in providing warnings to their doctors about ObTape. *See, e.g.*, Burt Compl. ¶¶ 100-104, ECF No. 1-1 in 4:14-cv-60.  Thus, Plaintiff's "negligent misrepresentation" claims are simply failure to warn claims, which Minnesota does recognize, so the Court declines to grant summary judgment on this basis.

For example, in *Prairie*, the Minnesota trial court presumed that a window washer who died after falling from the defendant's roof rigger platform product would have heeded an adequate instruction regarding the proper way to secure the platform had one been given. *Id.* But all *Prairie* allows the Court to presume is that Plaintiffs' physicians would have paid attention to an additional warning about the risks of ObTape. In other words, *Prairie* allows the Court to presume that the physicians would have considered the infection and erosion rates—among other considerations—in determining which product to select for their patients. The cases do not, however, permit the Court to speculate about how the physicians would have weighed the additional warnings. For this reason, the heeding presumption does not apply. Larranaga and Hill did not point to sufficient evidence to create a fact dispute on reliance and causation, so Mentor is entitled to summary judgment on their misrepresentation and fraud claims.

**III. Constructive Fraud Claims**

Larranaga, Kaiser, Hill, Burt, and Alexander brought "constructive fraud" claims. Mentor contends that Plaintiffs' constructive fraud claims fail because Mentor did not owe a fiduciary duty to Plaintiffs; under Minnesota law, "[c]onstructive fraud reposes exclusively in the context of fiduciary obligations and is simply a characterization of a breach of such a duty."

16

*Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209, 213 (Minn. 1984).

The crux of Plaintiffs' "constructive fraud" claims is that Mentor had certain information about the risks of ObTape but intentionally concealed it from Plaintiffs' physicians. *See, e.g.,* Burt Compl. ¶¶ 92-98, ECF No. 1-1 in 4:14-cv-60. In other words, Plaintiffs are asserting a classic fraudulent concealment claim, which is recognized under Minnesota law. *See Flynn*, 627 N.W.2d at 350 ("Under Minnesota law, fraudulent misrepresentation based on the concealment of a material fact occurs when one party knowingly conceals a material fact that is 'peculiarly within his own knowledge,' and the other party relies on the presumption that the fact does not exist.") (quoting *Richfield Bank & Trust Co. v. Sjogren,* 309 Minn. 362, 364, 244 N.W.2d 648, 650 (1976)).

As discussed above, Kaiser, Burt, and Alexander each produced evidence that their physicians would not have implanted them with ObTape had they known its true risks, which Mentor concealed from them. Therefore, the Court denies summary judgment as to their fraudulent concealment claims. But Larranaga and Hill did not point to sufficient evidence of causation and reliance, so Mentor is entitled to summary judgment on their fraudulent concealment claims.

**IV. Breach of Warranty Claims**

Larranaga, Kaiser, Hill, Burt, and Alexander brought breach of warranty claims. Mentor contends that the warranty claims are time-barred. Larranaga, Kaiser, Burt, and Alexander do not contest summary judgment as to their breach of warranty claims, so Mentor's motion as to those claims is granted.

Hill contests summary judgment on her breach of warranty claims. Mentor argues that her claims are time-barred. But even if Hill's breach of warranty claims are not time-barred, Hill's breach of warranty claims fail for the same reasons her fraud and misrepresentation claims fail: Hill did not point to any evidence that any breach of warranty by Mentor caused her injuries. "To establish a warranty claim the plaintiff must basically prove: the existence of a warranty, a breach, and a causal link between the breach and the alleged harm." *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 825 (D. Minn. 2010) (quoting *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52-3 (Minn. 1982)). Hill did not point to any evidence that Mentor made warranties directly to her. She also did not point to any evidence of a causal link between any representation Mentor made to Dr. Sarnacki and the alleged harm to Hill. The Court thus concludes that Mentor is entitled to summary judgment on Hill's breach of warranty claims.

**CONCLUSION**

As discussed above, the Court makes the following rulings on Mentor's partial summary judgment motions:

**Lisa Bromley.** Mentor's motion for summary judgment (ECF No. 45 in 4:13-cv-17) is granted. Only Bromley's negligence claim remains pending for trial.

**Maria Larranaga.** Mentor's motion for partial summary judgment (ECF No. 29 in 4:13-cv-339) is granted. Only Larranaga's negligence and strict liability claims remain pending for trial.

**Marian Kaiser.** Mentor's motion for summary judgment (ECF No. 29 in 4:13-cv-464) is granted as to Kaiser's breach of warranty claims. Mentor's motion is denied as to Kaiser's intentional misrepresentation, negligent misrepresentation, fraud, and fraudulent concealment claims. Those claims, along with her strict liability and negligence claims, remain pending for trial.

**Sandy Anne Hill.** Mentor's motion for summary judgment (ECF No. 29 in 4:13-cv-485) is granted. Only Hill's negligence and strict liability claims remain pending for trial.

**Barbara Burt.** Mentor's motion for summary judgment (ECF No. 27 in 4:14-cv-60) is granted as to Burt's breach of warranty claims. Mentor's motion is denied as to Burt's intentional misrepresentation, negligent misrepresentation, fraud, and fraudulent concealment claims. Those claims, along with her strict liability and negligence claims, remain pending for trial.

**Leslie Alexander.** Mentor's motion for summary judgment (ECF No. 27 in 4:14-cv-62) is granted as to Alexander's strict liability claim and breach of warranty claims. Mentor's motion is denied as to Alexander's intentional misrepresentation, negligent misrepresentation, fraud, and fraudulent concealment claims. Those claims, along with her negligence claim, remain pending for trial.

Within seven days of the date of this Order, the parties shall notify the Court whether the parties agree to a *Lexecon* waiver.

IT IS SO ORDERED, this 19th day of November, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
